## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEDIRA D. WILSON, as Administratrix of the Estate of Armada Edna Wilson, Deceased<br>2034 S. Hemberger Street<br>Philadelphia, PA 19145 | : : : : : | **CIVIL ACTION NO.**<br><br>**JURY TRIAL DEMANDED** |
| vs. | : : : | |
| CITY OF PHILADELPHIA<br>1515 Arch Street, 15th Floor<br>Philadelphia, PA 19102 | : : : : | |
| and | : : | |
| PHILADELPHIA FIRE DEPARTMENT – EMS<br>240 Spring Garden Street<br>Philadelphia, Pennsylvania 19123 | : : : : | |
| and | : : | |
| CITY OF PHILADELPHIA, REGIONAL OFFICE<br>OF EMERGENCY MEDICAL SERVICES<br>7800 Ogontz Avenue<br>Philadelphia, PA 19150 | : : : : : : | |
| and | : : | |
| EMILY KLENK<br>240 Spring Garden Street<br>Philadelphia, Pennsylvania, 19123 | : : : : | |
| and | : : | |
| DYLAN TROST<br>240 Spring Garden Street<br>Philadelphia, Pennsylvania, 19123 | : : : : | |
| and<br>JOHN/JANE DOES<br>240 Spring Garden Street<br>Philadelphia, Pennsylvania, 19123 | : : : : | |

## CIVIL ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, Shedira D. Wilson, Administrator of the Estate of Armada Wilson, deceased, by and through her attorneys, Wapner, Newman, Brecher & Miller, alleges as follows:

1.      This action arises from the death of Armada Wilson, age 65, who died as a direct result of the conduct of the Defendants in intentionally denying and delaying Ms. Wilson's access to medical care while suffering from several serious medical conditions on February 13, 2024, when in acute medical distress, allowing and causing her condition to deteriorate to the point of death. Ms. Wilson's death was a foreseeable and direct result of the conduct of the individual and institutional defendants, such conduct constituting reckless disregard for the life of decedent, Armada Wilson and shocking the conscience.

## NATURE OF THE CLAIM

2.      This civil rights action is initiated under 42 U.S.C. §1983, arising from the conduct of the Defendants in denying and delaying to adequately diagnose and treat the decedent, Armada Wilson, for breathing difficulty, chest pains, and other critical conditions. As set forth in greater detail below, this deliberate indifference violated Ms. Wilson's Eighth Amendment Rights under the United States Constitution.

3.      Despite multiple pleas by decedent, Armada Wilson, to the Defendants made by her and her family present to be evaluated and provided with medical care, she was consistently disregarded, her medical condition improperly evaluated, her urgent condition ignored, and the Defendants failed to timely and adequately respond to calls for emergency help and failed to bring with them necessary items which were critical for her care and survival, all in direct violation of Standard Operating Procedures.

4.     Decedent, Armada Wilson eventually succumbed as a result of the Defendants' failure to provide timely and adequate medical attention and/or treatment. The conduct of the Defendants' constituted cruel and unusual punishment, which evidences a deliberate indifference to decedent Armada Wilson's health, well-being, and medical needs, shocks the conscience, and offends the standards of decency in society.

## PARTIES

5.     On April 4, 2024, Plaintiff, Shedira D. Wilson, was appointed the Administrator of the Armada Wilson, deceased. *See* Short Certificate, attached hereto as Exhibit A. Plaintiff is an individual citizen and resident of the Commonwealth of Pennsylvania, residing therein at the above captioned address.

6.     Plaintiff, Shedira D. Wilson, is the daughter of decedent, Armada Wilson.

7.     At all times material hereto, decedent Armada Wilson, was a resident of Philadelphia County and the Commonwealth of Pennsylvania.

8.     Defendant, City of Philadelphia, is a political subdivision, and governmental entity in the Commonwealth of Pennsylvania, organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 1515 Arch Street, Philadelphia, PA 19102.

9.     At all times material hereto, Defendant, City of Philadelphia, exercised authoritative, financial and overall administrative control of Defendants Philadelphia Fire Department – EMS, City of Philadelphia Regional Office of Emergency Services, Defendants Klenk and Trost, and John/Jane Does, and is a proper defendant under 42 U.S.C. §1983.

10.     Defendant, Philadelphia Fire Department – EMS, is a city, political subdivision, and governmental entity in the Commonwealth of Pennsylvania, organized and existing under the

laws of the Commonwealth of Pennsylvania, with a principal place of business at 240 Spring Garden Street, Philadelphia, PA 19123 and is a proper defendant under 42 U.S.C. §1983.

11.    Defendant, City of Philadelphia Regional Office of Emergency Medical Services is a city, political subdivision, and governmental entity in the Commonwealth of Pennsylvania, organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 7800 Ogontz Avenue, Philadelphia, PA 19150, and is a proper defendant under 42 U.S.C. §1983.

12.    Defendant, Emily Klenk, (herein "Defendant Klenk"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 240 Spring Garden Street, Philadelphia, PA 19123.

13.    At all times relevant herein, Defendant Klenk was employed as an Emergency Medical Technician with the Defendants City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Services, and at all times relevant herein, was acting in the course of scope of said employment, and under the direction and control of said Defendants.

14.    Defendant, Dylan Trost, (herein "Defendant Trost"), is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 240 Spring Garden Street, Philadelphia, PA 19123.

15.    At all times relevant herein, Defendant Trost was employed as an Emergency Medical Technician with the Defendants City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Services, and at all times relevant herein, was acting in the course of scope of said employment, and under the direction and control of said Defendants.

16.     Defendant, EMT's John/Jane Doe #1-10, is an adult person and resident of the Commonwealth of Pennsylvania with a business address at 240 Spring Garden Street, Philadelphia, PA 19123.

17.     At all times relevant herein, Defendant John/Jane Doe(s) were employed as Emergency Medical Technicians with the Defendants City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services, and at all times relevant herein, was acting in the course of scope of said employment, and under the direction and control of said Defendants.

18.     At all relevant times hereto, Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services had a duty to provide timely and proper medical care to persons seeking emergency services.

19.     At all times relevant hereto, Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services were acting by and through its actual and/or ostensible agents, servants, and/or employees including Defendants, Klenk, Trost, John/Jane Doe(s) and/or medical practice personnel whose activities and conduct with regard to the medical care and treatment provided to decedent Armada Wilson are presently known only to the Defendants, but not to Plaintiff, after reasonable investigation and in the absence of complete discovery.

20.     At all times material hereto Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services were acting by and through its actual and/or ostensible agents, servants, and/or employees including Defendants, Klenk, Trost, John/Jane Doe(s) and/or medical practice personnel whose activities and conduct with regard to the medical care and treatment provided to decedent Armada

Wilson are presently known only to the Defendants, but not to Plaintiff, after reasonable investigation and in the absence of complete discovery, under theories of agency, master-servant, *respondeat superior,* and/or control or right of control.

21.    At all times material hereto, Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services were acting by and through its actual and/or ostensible agents, servants, and/or employees including Defendants, Klenk, Trost, John/Jane Doe(s) and/or medical practice personnel, and its actual and/or ostensible agents, servants, and/or employees, as identified herein, were providing emergency medical treatment, and/or nursing, and were obligated to bring to bear in the practice of their respective professions the professional skill, knowledge, and care that they possessed, and to pursue their professions in accordance with reasonably safe and acceptable standards of medicine and nursing in general, and in their particular specialties.

22.    During the time of Ms. Wilson's treatment, Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services were acting by and through its actual and/or ostensible agents, servants, and/or employees including Defendants, Klenk, Trost, John/Jane Doe(s) jointly and/or severally were responsible for establishing the policies and procedures of emergency medical technicians and/or medical professionals hired by and employed by the Defendants and were in charge of training, supervising, disciplining, and hiring.

23.    During the time of decedent, Armada Wilson's contact with the Defendants, the policies and procedures were such that Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services were acting by and through its actual and/or ostensible agents, servants, and/or employees

including Defendants, Klenk, Trost, John/Jane Doe(s) and/or medical practice personnel, were discouraged from ensuring proper routes of travel to and from various locations in the City of Philadelphia, failed to respond with urgency, failed to park vehicles nearby homes where emergency services were needed, and failed to either have or bring into decedent's premises equipment necessary to treat, move, properly and timely respond, or otherwise ensure the safety of persons like decedent Armada Wilson.

## JURISDICTION AND VENUE

24.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the United States Constitution and 42 U.S.C. § 1983. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

25.    Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and the aforementioned statutory provision. Plaintiffs further invoke the pendent jurisdiction of this Court, provided by 28 U.S.C. §1367, to hear and decide claims arising under state law.

26.    Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants reside in this district, all Defendants are residents of the Commonwealth of Pennsylvania, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## OPERATIVE FACTS

27.    The preceding paragraphs and allegations stated above are incorporated by reference as though fully set forth herein.[1]

---

[1] Prior to filing the instant Complaint in this Court, Plaintiff filed a Writ of Summons and a Motion for Pre-Complaint discovery in state court in the County of Philadelphia. Defendant City of Philadelphia refused to engage in any pre-complaint discovery instead filing a Rule to File a Complaint and thereby precluding any discovery of persons or conduct from information in the sole possession and control of the Defendants in this matter.

28.    On February 13, 2024, decedent Armada Wilson lived at 2034 S. Hemberger, Philadelphia, PA.

29.    At that time, Nahijah Wilson, decedent Armada Wilson's granddaughter, lived with decedent Armada Wilson at that address, along with Nahijah's Wilson's son.

30.    At approximately 11:00 am on February 13, 2024, decedent Armada Wilson developed issues breathing, and asked her granddaughter Nahijah Wilson, to call 911.

31.    During that call with 911, Nahijah Wilson requested emergency assistance, reported her grandmother's condition, was asked questions about whether her grandmother was alert or talking, and was informed that emergency services were on their way.

32.    After about five (5) minutes when no one had arrived, Nahijah Wilson again called 911 as her grandmother's problems breathing were increasing, and still no one arrived. She then placed another call to 911 five (5) minutes later.

33.    Prior to this date, decedent Armada Wilson needed emergency medical assistance approximately five (5) times in the past ten (10) years, and in each time within five (5) to ten (10) minutes EMT's promptly arrived and pulled the ambulance directly in front of the premises at 2034 S. Hemberger Street.

34.    At approximately 11:20 am, the EMTs finally arrived, however, instead of driving down Hemberger Street, the EMTs parked at the end of the block on Snyder Avenue, and Nahijah Wilson witnessed the EMTs walking slowly down the block toward the home, without a stretcher, or any equipment, showing no signs of urgency.

35.    When the EMTs arrived, upon information and belief, Plaintiff alleges that Defendants Klenk and Trost were the two responding technicians.

36.     In the alternative, if either Defendant Klenk or Defendant Trost were not one of or both of the responding technicians, then the technician(s) were a yet unknown Defendant John/Jane Doe.[2]

37.     Upon arrival of the technicians, decedent Armada Wilson was awake, alert and able to engage in conversation, and Nahijah Wilson was also present to provide information as to decedent Armada Wilson's conditions.

38.     However, Defendant Klenk first began asking questions pertaining to the length of decedent Armanda Wilson's oxygen cord and her tank, but failed to assess decedent Armada Wilson's health, take vitals, or provide any actual medical care and treatment to decedent Armada Wilson.

39.     During this time, Defendant Trost was present on the scene, but took no action, appearing to take a secondary role to Defendant Klenk.

40.     Due to Defendant Klenk's persistence in asking questions without providing any care or any sense of urgency to the situation, Nahijah Wilson was forced to repeatedly ask why care was not being provided as her grandmother's health deteriorated, to which Defendant Klenk became angry, argued with Nahijah Wilson, while failing to provide attention and medical care to decedent.

---

[2] Plaintiff alleges that the only EMTs on the scene identified themselves as Defendant Klenk and Defendant Trost, and to date, the information Plaintiff has been able to obtain suggests that only Defendant Klenk and Defendant Trost were the EMTs on scene on February 13, 2024.  However, as Plaintiff has not engaged in discovery, it is possible that said individuals were not either Defendant Klenk or Defendant Trost and hence the allegations are that Defendant John/Jane Doe's are the appropriate EMT's and will be individually named at a later date as discovery is completed.

41.     During this time, Defendant Klenk was agitated and argumentative, made no attempts to explain her actions, and blatantly failed to properly attend to the medical issues of decedent, Armada Wilson.[3]

42.     As a result of this conduct by Defendant Klenk, Nahijah Wilson took out her mobile phone and announced she was videotaping Klenk's conduct including the lack of medical care, and continued to make repeated requests that the Defendants immediately get her grandmother out of the home or provide medical care, neither of which was done.

43.     At this time, with no care being provided, decedent Armada Wilson further pled for the Defendants to get her medical care and take her to the hospital stating that she was going to die if they did not promptly respond.

44.     At all times relevant, it was apparent that neither Defendant Klenk or Trost had brought any medical equipment with them necessary to treat or evaluate decedent Armada Wilson[4], creating the inability to provide medical care, or be prepared to respond to the need for care should decedent Armada Wilson's condition deteriorate – which it did at all times including while decedent Armada Wilson was being transitioned from her home to the ambulance.

45.     At least ten (10) minutes after arrival, after having provided no medical care and treatment to decedent, Defendant Klenk and/or Defendant Trost finally began to take steps to remove decedent Armada Wilson from the home; however, they failed to bring with them either a stretcher or any supplies to be used for her medical transport other than a small chair.

---

[3] As a result of the incidents of this day, Nahijah Wilson filed a police report, citing the failure of the Defendants to provide medical care in any appropriate manner, to which Defendant Klenk, in retaliation, filed her own police report falsely accusing Nahijah Wilson of assault.

[4] Armada Wilson had her own oxygen tank and nasal cannula. Defendants did not bring with them or supply any of their own equipment or supplies.

46.     Critically, again, at no point in time did Defendant Klenk or Defendant Trost bring any equipment or supplies with them to provide care and treatment to decedent Armada Wilson, or to transport Armada Wilson, nor did either Klenk or Trost make any efforts to go back to the ambulance to retrieve any equipment or supplies, request additional help, or in any way take a single step needed to ensure the safety and health of decedent Armada Wilson.

47.     Once Defendants Klenk and Trost finally took steps to move decedent Armada Wilson from her home to the ambulance, they had neither the right equipment nor supplies needed.

48.     Approximately ten (10) to fifteen (15) minutes after the arrival of the EMTs, with no substantive medical care having been provided, and before/while being removed from her home, decedent Armada Wilson collapsed, lost control of her urinary functions, blood came gushing from her mouth, and became unresponsive as she was being "transported" by Klenk and Trost (ie, dragged down the street on a small chair) to the ambulance.

49.     Importantly, as only Defendants Klenk and Trost were on the scene having made the decisions not to call for backup assistance and not to bring a stretcher to use in transport, Klenk and Trost spent several minutes strapping her to a small chair, expending more of their response time, and making their ability to timely and effectively move decedent Armada Wilson out of the home extremely difficult.  During this critically wasted time, decedent Armada Wilson became unresponsive which made moving her safely and swiftly without proper equipment even more difficult.

50.     At all times relevant, in the event there was a need for transport, Defendants Klenk and Trost were well aware that the scene (decedent's home) was a narrow brownstone structure with outside steps to navigate for ingress and egress.  Defendants Klenk and Trost were also well aware of decedent's size and body type.

51.     At no point did Defendants Klenk or Trost radio to or call for additional personnel to assist with their decision making or their need to move decedent Armada Wilson from the home to the ambulance in a safe and timely manner.

52.     The photographs below show decedent Armada Wilson being moved from her home down the street to the ambulance, barely strapped into to the small chair, leg hanging off the side, with only Defendants Klenk and Trost available to move her in an unsecured, unsafe manner from her home and then down the entire block to Snyder Avenue where Klenk and Trost had parked the ambulance.  As can be seen, empty parking spaces were readily available for the ambulance to have been parked or moved to an area outside the decedent's home.



53.     The conduct of the Defendants Klenk and Trost inside of the home and during transport to the ambulance was witnessed and observed by decedent's granddaughter, Nahijah Wilson, who was horrified by the EMTs conduct and whose conscience was shocked.

54.     Nahijah Wilson's conscience was also shocked by the conduct of the Defendants because of her prior experiences when past emergency response had always been timely, with response vehicles arriving at the home, parking in front of the home, bringing in equipment bags, oxygen tanks, stretchers, etc., and providing immediately care and treatment to her grandmother or prompt transport to a hospital, none of which occurred during the response at issue.

55.     From the time when the EMTs first arrived until the EMTs removed decedent Armada Wilson from her home, decedent Armada Wilson's daughter, Shedira Wilson (who was at work), was contemporaneously being informed of her mother's condition by her daughter, Nahijah Wilson, who was providing Shedira Wilson with detailed descriptions of the EMT's conduct, lack of response, and lack of any care and treatment being provided.

56.     As a result, Shedira Wilson made her own call to 911 at approximately 11:36am wherein she described the lack of care, and she also described that Defendant Klenk was arguing with Nahijah Wilson rather than providing any medical care to her mother.  During that call, Shedira Wilson requested that police assistance come to the scene.

57.     At approximately 11:45am, Shedira Wilson arrived on the scene at which point in time the police she requested along with fire trucks had arrived and were blocking the roadway.

58.     Importantly, while Plaintiff cannot establish the exact time that police and fire had arrived on the scene, Plaintiff alleges that the police and fire arrival came in response to her phone call to 911 at or around 11:36am which was after Defendants Klenk and Trost removed decedent Armada Wilson from the home and dragged her down the street.  Klenk and Trost themselves never requested backup or additional assistance for medical care or transport.

59.     Once on scene, Shedira Wilson observed her mother, decedent Armada Wilson, in the back of the ambulance receiving medical care including CPR from two Firemen, not EMTs Defendant Klenk or Defendant Trost.

60.     Shedira Wilson noted that at approximately 12:02 pm, the ambulance left the scene with her mother, decedent Armada Wilson, who was transported to Jefferson Hospital.

61.     After arrival at Jefferson Hospital, Shedira Wilson was informed by medical staff that decedent Armada Wilson was intubated, had pneumothorax and a collapsed lung, and was in a coma.

62.     Over the next few days, decedent Armada Wilson never regained consciousness, and after discussion with the family, the decision was made to stop life saving measures. Decedent Armada Wilson was pronounced dead on February 19, 2024.

63.     Decedent, Armada Wilson's family was informed by medical staff at Jefferson Hospital that the cause of her death was not the original issues that caused decedent Armada Wilson to have breathing issues while at home, and that in fact, her lungs had healed. However, the cause of death was lack of oxygen to the brain, caused only by the delay in Ms. Wilson receiving appropriate medical care.

64.     Plaintiff alleges that if decedent had been taken to Jefferson Hospital in a timely manner, or if Defendants Klenk and Trost provided timely and proper medical care and treatment, decedent Armada Wilson would have survived.

65.     Despite knowing of the risk of serious injury or death due to the failure to provide timely and proper medical care and treatment to Ms. Wilson, the Defendants, at all times, denied such treatment to Ms. Wilson. Instead, Ms. Wilson's emergency medical condition was met with

unresponsive and unprepared medical care which caused/permitted her condition to worsen during the time she was under the care of the Defendants, all of which was foreseeable and preventable.

66.     Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Services, knew or had a reason to believe that Defendants Klenk, Trost, and/or John/Jane Doe(s) were not appropriately responding to and/or treating decedent Armada Wilson.

67.     Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Services were acting by and through their actual and/or ostensible agents, servants, and/or employees including Defendants, Klenk, Trost, John/Jane Doe(s), and knew that decedent Armada Wilson was in distress, personally observed decedent Armada Wilson suffering from symptoms of a serious medical condition, and knowingly caused/permitted her condition to worsen while under their care, all of which occurred while Defendants made the conscious decision not to timely transport or provide proper care and treatment to Ms. Wilson.

68.     Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Services were acting by and through their actual and/or ostensible agents, servants, and/or employees including Defendants, Klenk, Trost, John/Jane Doe(s), and failed to respond to the medical emergency of decedent Armada Wilson; Defendants failed to respond to decedent Armada Wilson's condition in a timely manner, failed to bring with them or have available equipment necessary to transport and treat decedent Armada Wilson, failed to request additional help, assistance, resources or direction in providing medical care to Ms. Wilson, and failed to act with any sense of urgency that was needed due to decedent Armada Wilson's deteriorating medical condition.

69.    All Defendants failed to provide prompt medical attention and treatment and/or transport for decedent Armada Wilson.

70.    As a direct and proximate result of the Defendants' unreasonable, unjustifiable and unconstitutional conduct, Armada Wilson's condition was caused/permitted to worsen during the time she was under the care of Defendants, which directly led to her death, all of which was preventable had timely and appropriate transport and/or medical care been provided.

## COUNT I: WRONGFUL DEATH / SURVIVAL ACT STATE LAW CLAIMS

71.    Armada Wilson, deceased, left surviving her three daughters, Shedira Wilson, Myisha Wilson and Jasmine Wilson, who are her sole beneficiaries under the Wrongful Death Act.

72.    As a result of the conduct of the Defendants, as set forth herein, Armada Wilson, deceased, was caused grave injuries and death resulting in the entitlement to damages by her beneficiaries under the Wrongful Death Act.

73.    Plaintiff, Shedira D. Wilson, Administrator of the Estate of Armada Wilson, deceased, claims all expenses recoverable under the Wrongful Death Act, including, but not limited to, damages for medical, funeral, and burial expenses and expenses of administration necessitated by reason of the injuries causing Armada Wilson's death.

74.    On behalf of the Wrongful Death Act beneficiaries, Plaintiff claims damages for monetary support that the decedent would have provided to the beneficiaries during her lifetime, including, but not limited to, the support provided, or which could have been expected to have been provided, to the beneficiaries.

75.    On behalf of the Wrongful Death Act beneficiaries, Plaintiff claims damages for services provided or which could have been expected to have been provided in the future.

76.　　On behalf of the Wrongful Death Act beneficiaries, Plaintiff claims damages for all pecuniary loss suffered by the beneficiaries.

77.　　On behalf of the Wrongful Death Act beneficiaries, Plaintiff claims damages for all loss of consortium, comfort, society, guidance, and tutelage that the beneficiaries may have received from the decedent if not for the decedent's untimely death.

78.　　On behalf of the Wrongful Death Act beneficiaries, Plaintiff claim the full measure of damages allowed under the Wrongful Death Act of Pennsylvania and the decisional law interpreting said Act.

79.　　Plaintiff, Shedira D. Wilson, Administrator of the Estate of Armada Wilson, deceased, is entitled to bring this action on behalf of the Estate of Armada Wilson under and by virtue of the Survival Act, 42 Pa. C.S. § 8302, the decisional law interpreting said Act, and the applicable Rules of Civil Procedure, which provide for the survivability of causes of action.

80.　　As a result of the conduct of all the Defendants, as set forth herein, Armada Wilson was caused grave injuries and death, resulting in the entitlement to damages by her Estate under the Survival Act.

81.　　As a result of the death of Armada Wilson, her Estate has been deprived of the economic value of her life expectancy, and Plaintiff claims under the Survival Act damages for all pecuniary losses suffered by the Estate as a result of the decedent's death, including all loss of income, earnings, retirement income, benefits, and Social Security income.

82.　　Plaintiff further claims under the Survival Act the total amount that the decedent would have earned in the future, minus the costs of personal maintenance.

83.    Plaintiff further claims under the Survival Act damages for the conscious pain and suffering endured by the decedent prior to her death, including physical and mental pain and suffering leading to the decedent's death.

84.    Plaintiff further claims under the Survival Act all damages recoverable pursuant to 42 Pa. C.S. § 8302 and the decisional law interpreting said Act.

85.    At the time Armada Wilson was in the care and custody of the Defendants, Plaintiffs did not know (or discover) or, in the exercise of reasonable diligence, could have known of (or discovered) Defendants' wrongful acts in connection with violation of the Plaintiffs' rights directly and proximately caused Plaintiffs' injuries. Decedent Armada Wilson's injuries and ultimately death were not inherently undiscoverable and were not objectively verifiable. The injuries that Ms. Wilson suffered are not a result of an instant or one simple act; they result from repeated conduct and the actual results and harm did not manifest until sometime later.

**WHERFORE,** Plaintiff demands judgment against Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services, Klenk, Trost, John/Jane Doe(s), for all damages provided under the Pennsylvania Survival and Wrongful Death Acts, jointly and severally, together with attorney's fees and costs, and pre- and post-judgment interest and any all relief.

## COUNT II — CIVIL RIGHTS- 42 U.S.C. 4 1983

**Plaintiff, Shedira D. Wilson, Esquire, Administrator of the Estate of Armada Wilson, Deceased v. Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services, Klenk, Trost, and John/Jane Doe(s)**

86.    The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

87.     Defendants in all their actions and inactions described herein with regard to decedent Armada Wilson were all acting under the color of state law.

88.     Defendants were deliberately indifferent, and all actions or omissions shocked the conscience and constituted state-created dangers pertaining to Armada Wilson's serious medical needs and thereby violated Ms. Wilson's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

89.     Defendants herein deprived Armada Wilson of her constitutionally guaranteed liberty interest by violating her right to due process of law under the Fourteenth Amendment to the United States Constitution.

90.     Defendants were aware that Plaintiff's decedent had clearly established constitutional rights to bodily integrity and medical care for her serious medical needs.

91.     Defendants' conduct, as set forth above, demonstrates that the harm caused to Plaintiff's decedent was foreseeable, preventable, and direct result of the Defendants' conduct.

92.     Defendants' conduct, as set forth above, demonstrates that the Defendants acted with deliberate indifference and conscious disregard for the great risk of serious harm to Plaintiff's decedent, such conduct rising to the level of shocking the conscience.

93.     Defendants' conduct, as set forth above, violated Armada Wilson's constitutional rights, as guaranteed by the United States and Pennsylvania Constitutions, and remediable under 42 U. S.C. § 1983.

94.     As a direct and proximate result of the Defendants' unreasonable, unjustifiable and unconstitutional conduct, Plaintiff's decedent was caused to suffer the injuries described herein, including her death.

95.     The conduct of the Defendants, jointly and/or severally, was outrageous, malicious, abusive, wanton, willful, reckless and designed, in its inexcusable recklessness, to inflict harm upon Plaintiff's decedent.

96.     The acts of the Defendants were committed willfully, wantonly, maliciously, intentionally, outrageously, and deliberately and by conduct so egregious as to shock the conscience of an evolved society.

97.     The collective actions of the Defendants were done under color of state law and constituted deliberate indifference to the rights of Armada Wilson and resulted in the needless, but predictable and foreseeable, ailments from her untreated and unabating conditions, all of which shocks the conscience. Such failures on the part of Defendants to act and provide proper transport and/or medical care and treatment to Ms. Wilson was a violation of the Eighth Amendment of the United States Constitution, and the laws of the Commonwealth of Pennsylvania.

98.     Defendants' failure to act appropriately, created an unnecessary and unjustifiable medical danger to decedent Armada Wilson.

99.     The defendants' failures in each and every repeated instance constituted a state created danger as to decedent Armada Wilson as:

   a.   the harm ultimately caused was foreseeable and direct,

   b.   the Defendants acted with willful disregard for the safety of the decedent Armada Wilson which shocks the conscience;

   c.   a relationship of medical urgency requiring treatment and care existed between the Defendants and decedent Armada Wilson; and

   d.   the Defendants used/misused their authority and created an opportunity that would not have existed otherwise for harm to come to decedent Armada Wilson.

100.    As a matter of policy or practice, the Defendants have, with deliberate indifference to the rights of decedent Armada Wilson, failed to adequately hire, screen, test, train, supervise and/or otherwise direct training of emergency healthcare providers concerning the medical needs and rights of persons such as decedent Armada Wilson to be free from the unlawful cruel and unusual punishment and conduct described herein.

101.    Defendants, jointly and/or severally, have intentionally or with conscious indifference and disregard to the rights of decedent Armada Wilson, failed to establish a system, which properly identifies, reports and/or investigates instances of improper medical intervention and care, and thereby, permitted, encouraged and tolerated a pattern and practice of improper medical triage and treatment, and gross inexcusable medical neglect, amounting to the implementation of a death sentence for decedent Armada Wilson herein.

102.    Defendants, jointly and/or severally, have a duty to provide reasonable medical services to citizens of the Commonwealth of Pennsylvania and City of Philadelphia consistent with proper medical protocol and the needs of the emergency medical transport system.

103.    The Defendants, jointly and/or severally, had an increased and heightened awareness of decedent Armada Wilson's medical needs because of her presentation to medical personnel and the clear need for immediate intervention due to her problems breathing. At that point, decedent Armada Wilson was not merely owed a generalized duty of care, but a specific duty of care relevant to the needs of her medical condition. The Defendants had a close and unique relationship with decedent Armada Wilson, which stemmed from her medical needs and the Defendants were in a unique position to provide the required medical care available nowhere else at all times relevant for decedent Armada Wilson.

104.    The totality of the conduct and omissions of the Defendants in light of the situation shocks the conscience, and includes but is not limited to the following:

a)    failing to promptly arrive to the home of decedent Armada Wilson;

b)    failing to take the proper route and/or be familiar with the location of the home so as to ensure the ambulance would be as close to the home as possible;

c)    failing to bring the ambulance to a location closest to the home;

d)    failing to recognize, communicate or understand the urgency of the situation prior to arrival at the home and to be prepared as a result;

e)    failing to acknowledge, understand or recognize the prior health issues of decedent Armada Wilson as provided to emergency services, and to take same into account when entering the home and assessing the situation, which Defendants utterly failed to attempt to asses at all;

f)    failing to have appropriate equipment with them either in the ambulance or brought with them into the home, included but not limited to diagnostic equipment such as pulse oximetry, blood pressure cuff, cardiac monitor, oxygen or glucometer;

g)    failing to make the immediate decision to urgently move her to the ambulance for prompt transport to a medical facility;

h)    If the decision was made that prompt transport was not needed, failing to provide timely and adequate medical care and treatment who was exhibiting signs of respiratory distress;

i)    failing to take timely action to properly assess decedent Armada Wilson's health and medical condition in order to treat same and prevent her condition from deteriorating;

j)     failing to act with urgency and promptness in light of the condition of decedent Armada Wilson immediately upon entering the home and thereafter;

k)     failing to take steps to evaluate or assess Ms. Wilson, formulate impressions, and/or provide treatment to decedent Armada Wilson upon entering the home and thereafter;

l)     failing to take steps to appropriately communicate with decedent's granddaughter, Nahijah Wilson, including deescalation of the situation, while instead inappropriately and unprofessionally confronting Nahijah Wilson in a combative, rude and dismissive matter while ignoring the health and safety of decedent Armana Wilson;

m)     failing to recognize upon entering the home that proper equipment and additional personnel was needed for the timely and safe transport of decedent Armada Wilson from the home, and thereafter failing to request assistance from any other EMTs, first responders, or city agency for same;

n)     failing to recognize upon entering the home that the situation required additional medical equipment and supplies not brought to the home, and failing to take steps to timely procure the needed medical equipment and supplies from the ambulance into the home;

o)     failing to have the appropriate equipment other than a stair chair available for use to transport decedent from her home into the ambulance;

p)     failing to recognize decedent's condition was deteriorating, and failing to provide necessary medical care and treatment which caused/permitted decedent to become unresponsive, suffer from cardiac arrest, and code at or around the time when transport from the home to the ambulance was finally initiated;

q)   authoring a report of the emergency response that was incomplete, inaccurate, and intentionally deceptive in order to protect the Defendant; the run report contradicts the timeline of events, including but not limited to blood pressure readings that are inconsistent with the timing of cardiac arrest, and claiming that the Defendants rendered CPR to Ms. Wilson when video evidence and direct witness observations will demonstrate otherwise;

r)   filing a false police report against decedent Armada Wilson's granddaughter, Nahijah Wilson, asserting assault against Defendant Klenk when no such assault took place; said report only being filed by Klenk in retaliation for being repeatedly questioned about the total lack of urgency in providing care.

105.   Moreover, the conduct of the Defendants prevented decedent Armada Wilson from receiving timely, proper and necessary medical care through any other means or avenues by nature of Defendants' control over the emergency medical system and ability to solely direct emergency services to persons like decedent Armada Wilson, leaving no alternative means of medical care outside of those provided by the Defendants.

106.   By their special relationship, Defendants, jointly and/or severally, owed decedent Armada Wilson a duty of care to provide competent and proper medical intervention to address her deteriorating condition. Defendants' failures violated decedent Armada Wilson's Constitutional rights under the Eighth and Fourteenth Amendments.

107.   As a direct and proximate result of the Defendants' unreasonable, unjustifiable and unconstitutional conduct, decedent was caused to suffer serious injuries including death.

**WHEREFORE**, Plaintiff demands judgment against Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency

Medical Services, Klenk, Trost, John/Jane Doe(s), for all damages provided under the Pennsylvania Survival and Wrongful Death Acts, jointly and severally, together with attorney's fees and costs, and pre- and post-judgment interest and any all relief available pursuant to 42 U. S .C. § 1983.

## COUNT III — CIVIL RIGHTS

**Plaintiff, Shedira D. Wilson, Esquire, Administrator of the Estate of Armada Wilson, Deceased v. Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services, Klenk, Trost, and John/Jane Doe(s)**

108.    The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

109.    Defendants' conduct, as set forth above, evinces a violation of decedent's constitutional rights, including those guaranteed by the Eight and Fourteenth Amendments to the United States Constitution.

110.    Defendants' conduct, as set forth above, demonstrates that the Defendants failed to properly train, and/or failed to have a proper policies and procedures in place regarding training of emergency medical technicians and medical providers on the appropriate emergency response (including assessment, treatment, monitoring and/or transport) for individuals exhibiting serious medical conditions such as that exhibited by Armada Wilson, thereby depriving decedent of her constitutional rights.

111.    Defendants' conduct, as set forth above, demonstrates that the Defendants failed to properly hire, train, supervise and/or monitor their EMTs and medical providers, and/or failed to have proper policies and procedures regarding hiring, training, supervising and/or monitoring emergency medical technicians and medical providers on the appropriate emergency response to

individuals exhibiting serious medical conditions such as Armada Wilson, thereby depriving decedent of her constitutional rights.

112.    Defendants' conduct, as set forth above, demonstrates that the Defendants failed to train, monitor, and supervise emergency medical technicians and medical providers to timely respond and properly treat individuals experiencing serious medical conditions such as that experienced by Armada Wilson, thereby depriving decedent Armada Wilson of her constitutional rights.

113.    The above-referenced actions are outrageous, egregious, and conscience-shocking, and rise to a level of intention to cause harm.

114.    The totality of the conduct and omissions of the Defendants in light of the situation shocks the conscience, and includes but is not limited to the following:

a)  failing to promptly arrive to the home of decedent Armada Wilson;

b)  failing to take the proper route and/or be familiar with the location of the home so as to ensure the ambulance would be as close to the home as possible;

c)  failing to bring the ambulance to a location closest to the home;

d)  failing to recognize, communicate or understand the urgency of the situation prior to arrival at the home and to be prepared as a result;

e)  failing to acknowledge, understand or recognize the prior health issues of decedent Armada Wilson as provided to emergency services, and to take same into account when entering the home and assessing the situation, which Defendants utterly failed to attempt to asses at all;

f)  failing to have appropriate equipment with them either in the ambulance or brought with them into the home, included but not limited to diagnostic equipment such as pulse oximetry, blood pressure cuff, cardiac monitor, oxygen or glucometer;

g)  failing to make the immediate decision to urgently move her to the ambulance for prompt transport to a medical facility;

h)  If the decision was made that prompt transport was not needed, failing to provide timely and adequate medical care and treatment who was exhibiting signs of respiratory distress;

i)  failing to take timely action to properly assess decedent Armada Wilson's health and medical condition in order to treat same and prevent her condition from deteriorating;

j)  failing to act with urgency and promptness in light of the condition of decedent Armada Wilson immediately upon entering the home and thereafter;

k)  failing to take steps to evaluate or assess Ms. Wilson, formulate impressions, and/or provide treatment to decedent Armada Wilson upon entering the home and thereafter;

l)  failing to take steps to appropriately communicate with decedent's granddaughter, Nahijah Wilson, including deescalation of the situation, while instead inappropriately and unprofessionally confronting Nahijah Wilson in a combative, rude and dismissive matter while ignoring the health and safety of decedent Armana Wilson;

m)  failing to recognize upon entering the home that proper equipment and additional personnel was needed for the timely and safe transport of decedent Armada Wilson from the home, and thereafter failing to request assistance from any other EMTs, first responders, or city agency for same;

n)   failing to recognize upon entering the home that the situation required additional medical equipment and supplies not brought to the home, and failing to take steps to timely procure the needed medical equipment and supplies from the ambulance into the home;

o)   failing to have the appropriate equipment other than a stair chair available for use to transport decedent from her home into the ambulance;

p)   failing to recognize decedent's condition was deteriorating, and failing to provide necessary medical care and treatment which caused/permitted decedent to become unresponsive, suffer from cardiac arrest, and code at or around the time when transport from the home to the ambulance was finally initiated;

q)   authoring a report of the emergency response that was incomplete, inaccurate, and intentionally deceptive in order to protect the Defendant; the run report contradicts the timeline of events, including but not limited to blood pressure readings that are inconsistent with the timing of cardiac arrest, and claiming that the Defendants rendered CPR to Ms. Wilson when video evidence and direct witness observations will demonstrate otherwise;

r)   filing a false police report against decedent Armada Wilson's granddaughter, Nahijah Wilson, asserting assault against Defendant Klenk when no such assault took place; said report only being filed by Klenk in retaliation for being repeatedly questioned about the total lack of urgency in providing care. care.

s)   Moreover,

t)   the conduct of the Defendants prevented decedent Armada Wilson from receiving timely, proper and necessary medical care through any other means or avenues by

nature of Defendants' control over the emergency medical system and ability to solely direct emergency services to persons like decedent Armada Wilson, leaving no alternative means of medical care outside of those provided by the Defendants.

u)   By their special relationship, Defendants, jointly and/or severally, owed decedent Armada Wilson a duty of care to provide competent and proper medical intervention to address her deteriorating condition. Defendants' failures violated decedent Armada Wilson's Constitutional rights under the Eighth and Fourteenth Amendments.

v)   As a direct and proximate result of the Defendants' unreasonable, unjustifiable and unconstitutional conduct, decedent was caused to suffer serious injuries including death.

**WHEREFORE**, Plaintiff demands judgment against Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services, Klenk, Trost, John/Jane Doe(s), for all damages provided under the Pennsylvania Survival and Wrongful Death Acts, jointly and severally, together with attorney's fees and costs, and pre- and post-judgment interest and any all relief available pursuant to 42 U. S .C. § 1983.

<u>**COUNT IV — STATE LAW MEDICAL NEGLIGENCE**</u>

**Plaintiff, Shedira D. Wilson, Esquire, Administrator of the Estate of Armada Wilson, Deceased v. Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services, Klenk, Trost, and John/Jane Doe(s)**

115.   The preceding paragraphs and allegations are incorporated by reference as though fully set forth herein.

116.     Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services and/or John Doe, and its employee medical providers, Defendants Klenk, Trost and/or John/Jane Doe(s) had a duty to comply with generally accepted medical standards of care in their medical treatment of decedent Armada Wilson.

117.     Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services and/or John Doe, and its employee medical providers, Defendants Klenk, Trost and/or John/Jane Doe(s), directly and by and through its agents, servants, and employees, had a duty to assess, evaluate, diagnosis, monitor, transfer, and otherwise provide prompt medical treatment to persons experiencing a serious medical condition, like Armada Wilson.

118.     Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services and/or John Doe, and its employee medical providers, Defendants Klenk, Trost and/or John/Jane Doe(s), directly and by and through its agents, servants, and employees, violated its duty of care to decedent Armada Wilson by failing to assess, evaluate, diagnose, monitor, transfer, and otherwise provide appropriate medical treatment in light of the circumstances.

119.     Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services and/or John Doe, and its employee medical providers, Defendants Klenk, Trost and/or John/Jane Doe(s) failed to hire, select, retain, and properly supervise competent medical professionals to provide medical care to persons experiencing a life-threatening condition, like Armada Wilson.

120.    Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services and/or John Doe, and its employee medical providers, Defendants Klenk, Trost and/or John/Jane Doe(s) failed to establish and/or follow policies, practices and procedures to ensure that persons experiencing a serious medical condition, like Armada Wilson, received proper and timely treatment.

121.    Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services and/or John Doe, and its employee medical providers, Defendants Klenk, Trost and/or John/Jane Doe(s), directly and by and through its agents, servants, and employees, violated its duty of care by:

a)    Failing topromptly arrive to the home of decedent Armada Wilson;

b)    failing to take the proper route and/or be familiar with the location of the home so as to ensure the ambulance would be as close to the home as possible;

c)    failing to bring the ambulance to a location closest to the home;

d)    failing to recognize, communicate or understand the urgency of the situation prior to arrival at the home and to be prepared as a result;

e)    failing to acknowledge, understand or recognize the prior health issues of decedent Armada Wilson as provided to emergency services, and to take same into account when entering the home and assessing the situation, which Defendants utterly failed to attempt to asses at all;

f)    failing to have appropriate equipment with them either in the ambulance or brought with them into the home, included but not limited to diagnostic equipment such as pulse oximetry, blood pressure cuff, cardiac monitor, oxygen or glucometer;

g) failing to make the immediate decision to urgently move her to the ambulance for prompt transport to a medical facility;

h) If the decision was made that prompt transport was not needed, failing to provide timely and adequate medical care and treatment who was exhibiting signs of respiratory distress;

i) failing to take timely action to properly assess decedent Armada Wilson's health and medical condition in order to treat same and prevent her condition from deteriorating;

j) failing to act with urgency and promptness in light of the condition of decedent Armada Wilson immediately upon entering the home and thereafter;

k) failing to take steps to evaluate or assess Ms. Wilson, formulate impressions, and/or provide treatment to decedent Armada Wilson upon entering the home and thereafter;

l) failing to take steps to appropriately communicate with decedent's granddaughter, Nahijah Wilson, including deescalation of the situation, while instead inappropriately and unprofessionally confronting Nahijah Wilson in a combative, rude and dismissive matter while ignoring the health and safety of decedent Armana Wilson;

m) failing to recognize upon entering the home that proper equipment and additional personnel was needed for the timely and safe transport of decedent Armada Wilson from the home, and thereafter failing to request assistance from any other EMTs, first responders, or city agency for same;

n) failing to recognize upon entering the home that the situation required additional medical equipment and supplies not brought to the home, and failing to take steps to timely procure the needed medical equipment and supplies from the ambulance into the home;

o)   failing to have the appropriate equipment other than a stair chair available for use to transport decedent from her home into the ambulance;

p)   failing to recognize decedent's condition was deteriorating, and failing to provide necessary medical care and treatment which caused/permitted decedent to become unresponsive, suffer from cardiac arrest, and code at or around the time when transport from the home to the ambulance was finally initiated;

q)   authoring a report of the emergency response that was incomplete, inaccurate, and intentionally deceptive in order to protect the Defendant; the run report contradicts the timeline of events, including but not limited to blood pressure readings that are inconsistent with the timing of cardiac arrest, and claiming that the Defendants rendered CPR to Ms. Wilson when video evidence and direct witness observations will demonstrate otherwise;

r)   filing a false police report against decedent Armada Wilson's granddaughter, Nahijah Wilson, asserting assault against Defendant Klenk when no such assault took place; said report only being filed by Klenk in retaliation for being repeatedly questioned about the total lack of urgency in providing care.

s)   Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services and/or John Doe, and its employee medical providers, Defendants Klenk, Trost and/or John/Jane Doe(s), violation of its duty of care to decedent Armada Wilson was a direct and proximate cause and a substantial factor in bringing about decedent Armada Wilson's death.

t)   Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services and/or John Doe, and its employee medical providers, Defendants Klenk, Trost and/or John/Jane Doe(s), by and through their agents, servants, and employees, violated their duty of care to decedent Armada Wilson by failing to make appropriate medical treatment recommendations when contacted.

**WHEREFORE**, Plaintiff demands judgment against Defendants, City of Philadelphia, Philadelphia Fire Department – EMS, and/or City of Philadelphia Regional Office of Emergency Medical Services, Klenk, Trost, John/Jane Doe(s), for all damages provided under the Pennsylvania Survival and Wrongful Death Acts, jointly and severally, together with attorney's fees and costs, and pre- and post-judgment interest and any all relief available pursuant to 42 U.S. C. § 1983.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all counts and all issues raised by her Complaint.

WAPNER, NEWMAN, BRECHER & MILLER

BY:

Nathan M. Murawsky, Esquire (#76661)
nmurawsky@wapnernewman.com
Julianna Merback Burdo, Esquire (#84128)
jburdo@wapnernewman.com
Leah M. Edelstein, Esquire (#330666)
ledelstein@wapnernewman.com
**WAPNER, NEWMAN, BRECHER & MILLER, P.C.**
1628 JFK Blvd., Suite 800
Philadelphia, PA  19103
(215) 569-0900
Attorneys for Plaintiff

DATED: 1/28/26

## VERIFICATION

The undersigned, having read the attached which was prepared by my attorneys, hereby verifies that the information contained therein may include information furnished to my attorneys by individuals other than myself; that the language used therein is that of my attorneys, and that to the extent the information set forth therein is not known to me, I have relied upon my attorneys in taking this Verification. Subject to the above limitations, the information contained therein is true and correct to the best of my information, knowledge and belief, subject to the penalties imposed by 18 Pa. C.S. 4904.